OPINION
Defendant-appellant, Todd M. Roberts, appeals a conviction from the Butler County Court of Common Pleas for vehicular homicide with an alcohol specification, driving under the influence of alcohol and failure to stop after an accident. We affirm.
On February 22, 1997, appellant was driving a Ford Explorer on U.S. Route 42 in Union Township and was involved in an automobile accident with another vehicle driven by Matthew Anderson. As a result of the accident, Anderson suffered fatal injuries. Officer Barry Walker of the Union Township Police Department, who reconstructed the accident, testified that appellant caused the accident by crossing the center lane line and hitting Anderson's vehicle.
Witnesses first viewed the accident at approximately 3:30 a.m. but appellant had left the scene. Union Township police arrived at the accident within ten minutes and Walker began to reconstruct the accident at 4:25 a.m. The Ford Explorer was in an embankment on the side of the road, with appellant's keys in the ignition of the vehicle. Walker determined that the Ford Explorer was leased to appellant.
The police left a message on appellant's home answering machine instructing appellant to contact the Union Township police department about the accident. About twenty to thirty minutes later, at 9:28 a.m., appellant called the Union Township police and was told an officer would transport appellant from his home to the police station.
At the police station, appellant was asked if he had any information about an automobile accident. Appellant stated that he remembered "vaguely, a crunching sound." At that point, appellant was advised of his Miranda rights and signed a waiver form. In a police interview, appellant stated that after exiting his vehicle, he looked into the "other vehicle" and then ran to get help. After walking through the woods, appellant apparently fell asleep. Later that morning, appellant awakened and ultimately arrived at "Lesourdsville-West Chester and Cincinnati-Dayton Road." Appellant entered a nearby restaurant, called a cab, ordered a Coke and fell asleep. Appellant was awakened by "two guys — or some guys" and "offered a ride home." When appellant arrived home without his keys, he forced the door open. Then, appellant had a glass of orange juice and listened to his phone messages. After hearing the message from the police, appellant returned the phone call.
Appellant testified that he had spent the evening of February 21-22 at a bachelor party. Witnesses from the party testified appellant attended the party between the approximate hours of 8:30 p.m. and 3:00 a.m. Appellant testified that he had two beers at the party and had not consumed any alcohol since leaving the party. During the interview, Walker described appellant as follows:
 Physically he appeared to be very tired. His eyes were glassy. I noticed a strong odor of an alcoholic beverage about his person. He actually — the [interview] room is fairly small and he, he — it, it permeate [sic] — the whole room smelled of alcohol — of an alcoholic beverage.
Walker testified that he believed appellant was under the influence of alcohol at the time of the accident. At 10:41 a.m., appellant consented to a breathalyzer test which recorded .091 grams of alcohol per two hundred ten liters of breath. At 11:30 a.m., appellant consented to a blood alcohol test, which recorded .068 grams of alcohol per deciliter of blood.
On April 22, 1997, appellant was indicted for aggravated vehicular homicide, failure to stop after an accident and driving under the influence of alcohol, R.C. 4511.19(A)(1). Appellant moved to suppress the breathalyzer and blood test results on June 4, 1997. A hearing on the motion to suppress occurred June 23, 1997. The motion was overruled in a July 1, 1997 entry. On August 11, 1997, after a jury trial, appellant was convicted of vehicular homicide, failure to stop after an accident and driving under the influence of alcohol. Appellant filed a timely notice of appeal and presents two assignments of error for our review:
 THE TRIAL COURT ERRED IN DENYING MR. ROBERTS' MOTION TO SUPPRESS THE DELINQUENT BAC RESULTS SEIZED BY POLICE.
 THE TRIAL COURT ERRONEOUSLY IMPOSED CONSECUTIVE SENTENCES FOR MR. ROBERTS' DUI AND VEHICULAR HOMICIDE CONVICTIONS.
In the first assignment of error, appellant argues that breathalyzer and blood alcohol tests (the "tests") should be suppressed because, at the time of the tests, the police lacked probable cause to arrest him for driving under the influence. Upon review, this court "may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence." State v. Brock (June 1, 1998), Clermont App. No. CA97-09-077, unreported, at 7. We are to defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses." Id. This court then independently reviews whether the trial court applied the correct legal standard. Id. at 7-8, citing State v. Anderson (1995),100 Ohio App.3d 688, 691.
The police may arrest a suspect for driving under the influence "where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs." Id. at 8-9, citing State v. Henderson (1990),51 Ohio St.3d 54, 56. Probable cause is established "if, at the time of the arrest, the facts and circumstances within the officer's knowledge of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that an individual had committed an offense." Id. at 9, citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225.
At the time appellant was taken into custody, the police had already found appellant's leased vehicle in an embankment with his keys in the ignition. Moreover, Walker's investigation established that appellant caused the fatal accident. At a minimum, these facts establish probable cause to arrest appellant for failure to stop after an accident.
After taking appellant into custody, police observed that appellant's clothes were muddy and his speech was slow. Appellant could not remember the accident, except a "crunching sound." In the interview room, Walker smelled strongly of alcohol. Appellant told the police he had consumed two beers at a bachelor party and had not consumed any alcohol since leaving the bachelor party. After the accident, appellant did not return to his home for almost six hours. During this time, appellant remembered waking in the woods. Later, appellant fell asleep at a nearby restaurant. As noted, the accident reconstruction indicated appellant caused the accident by crossing the center lane line. See State v. Woods (Sept. 9, 1991), Butler App. No. CA90-07-125, unreported. Based on the foregoing, we find probable cause was established to arrest appellant for driving under the influence of alcohol.
Appellant also argues that the tests failed to comply with the two hour rule for alcohol testing, R.C 4511.19(D)(1), which provides that:
 In any criminal prosecution or juvenile court proceeding for a violation of this section, * * * the court may admit evidence on the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in the defendant's blood, urine, breath, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of the alleged violation.
The Ohio Supreme Court has held that test results obtained more than two hours from the alleged violation must be excluded from any prosecution under R.C. 4511.19(A)(2), (3) (4). Newark v. Lucas (1988), 40 Ohio St.3d 100, 104. The court reasoned that "[t]he results of such tests and their accuracy are crucial to a determination of guilt or innocence. Id. at 103. "The critical issue at trial is the accuracy of the test, not the behavior of the accused." Id.
However, the supreme court has also held "that in a criminal prosecution for violation of R.C. 4511.19(A)(1) * * *, the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation." Id. at 105. The court emphasized "that no presumptive weight is given to the test results * * *." Id. at 104. Also, the court observed that the time lapse of more than two hours "does not, by itself, diminish the probative value of the test results." Id. Finally, the court noted that the prosecution in Newark "planned to introduce the tests results at trial together with the testimony of an expert toxicologist, who would relate the test results back to the time of the accident and state the effect of the alcohol concentration." Id. at 105.
In this case, the prosecution admitted appellant's tests, both conducted more than two hours after the accident. Appellant registered .091 grams per two hundred ten liters of breath on a breathalyzer test at 10:41 a.m. Also, at 11:30 a.m., appellant had a blood alcohol concentration of .068 grams per deciliter. Dr. Harry Plotnik, a consultant in forensic toxicology, testified as an expert witness. Plotnik evaluated the test results of appellant through a procedure known as retrograde extrapolation. By this procedure, Plotnik estimated appellant's alcohol level at the time the offense was committed.
In the retrograde extrapolation, Plotnik assumed the accident took place at 3:30 a.m. and appellant did not consume any alcohol after the accident. He testified that the average rate of disappearance of alcohol from the body is .015 grams per hour. Plotnik concluded that, since the breathalyzer test took place seven hours after the accident, appellant's alcohol level would have been about .196 grams per two hundred ten liters of breath at 3:30 a.m. Using similar analysis, Plotnik concluded appellant's blood alcohol level at the time of the accident was about .188 grams per deciliter. Plotnik stated that, if appellant consumed any alcohol after 3:30 a.m., the retrograde extrapolation would be inaccurate because retrograde extrapolation is based on alcohol already being absorbed into the body. He testified that complete absorption of alcohol takes place in sixty minutes after consumption, with more absorption in the first thirty minutes.
Dr. David Schneider testified that, in his expert opinion, retrograde extrapolation after two hours was not scientifically possible. Schneider emphasized that retrograde extrapolation can only go back to a "peak" of someone's blood alcohol concentration. Schneider stated that this "peak" happens after the subject's final drink is absorbed into the body.
We find that the state established sufficient foundation to admit appellant's test results. Appellant had an opportunity to cross-examine Plotnik and present the expert testimony of Schneider. See Newark, 40 Ohio St.3d at 105. The jury was in the best position to evaluate the weight, if any, to give the expert testimony. Id. at 104. See, also, London v. Scurry (July 22, 1996), Madison App. No. CA95-10-033, unreported, at 3. Therefore, the tests were properly admitted.
Appellant also argues that the tests should have been excluded pursuant to Evid.R. 403(A), which states "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or by misleading the jury." Upon appellate review, this court will reverse the trial court's decision to admit evidence if an abuse of discretion is shown. State v. Frazier (1995), 73 Ohio St.3d 323, 338, certiorari denied (1996), 516 U.S. 1095, 116 S.Ct. 820. The tests, presented with Plotnik's expert testimony, were probative of appellant's condition at the time of the accident and did not mislead the jury or confuse the relevant issues. Accordingly, we find that the decision of the trial court to admit the tests was within its discretion. The first assignment of error is overruled.
In the second assignment of error, appellant argues that the trial court erred by convicting appellant of vehicular homicide and driving under the influence of alcohol because the crimes are allied offenses of similar import. In Ohio, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A).
The Ohio Supreme Court has established a "two-tier test * * * to determine whether two or more crimes are allied offenses of similar import." Newark v. Vazirani (1990), 48 Ohio St.3d 81, syllabus.
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. (Emphasis in original.)
Id.
Therefore, the first step is to compare the elements for vehicular homicide and driving under the influence of alcohol. If the two crimes are allied offenses of similar import, the court proceeds to the second tier of the Vazirani test. Vehicular homicide, R.C. 2903.07, provides in relevant part that:
 (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall negligently cause the death of another or the unlawful termination of another's pregnancy.
 (B) Whoever violates the section is guilty of vehicular homicide, a misdemeanor of the first degree.
The vehicular homicide conviction included an alcohol specification, which states in part:
 If the jury or judge as trier of fact finds that the offender was under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, at the time of the commission of the offense, then the offender's driver's or commercial driver's license or permit or non-resident driving privileges shall be permanently revoked * * *. (Emphasis added.)
R.C. 2903.07(B).
In addition, R.C. 2903.07(C) provides that:
 If the offender previously has been convicted or pleaded guilty to a violation of this section * * *, if the offender has accumulated twelve points * * * within one year of the offense, or in the commission of the offense the offender was driving under suspension or operating a motor vehicle while under the influence of alcohol * * *, the offender shall be sentenced to a mandatory prison term and shall not be eligible for a sentence to a community control sanction * * *, for judicial release pursuant to 2929.13 of the Revised Code, for judicial release pursuant to 2929.20 of the Revised Code, or for a reduction of a stated prison term or a release pursuant to section 2967.193
[2967.19.3] of the Revised Code or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. (Emphasis added.)
The alcohol specification does not affect the degree of the crime for vehicular homicide, which is a misdemeanor of the first degree,[1] but only enhances the penalty. See R.C. 2903.07(B).
Driving under the influence of alcohol, R.C 4511.19(A)(1), provides that:
 (A) No person shall operate any vehicle, streetcar, or trackless trolley within this state if any of the following apply: (1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse[.]
Vehicular homicide and driving under the influence of alcohol are not allied offenses of similar import. State v. Schultz (June 7, 1996), Pickaway App. No. 94 CA 31, unreported, at 10. Vehicular homicide has the death of another or termination of another's pregnancy as an element, but driving under the influence of alcohol can occur without either of these elements. Id. at 10-11. Also, vehicular homicide can be committed without the "the offender being under the influence of alcohol." Id. at 11. The crimes are "separate and distinct." Id.; accord, State v. Adkins (Dec. 29, 1994), Cuyahoga App. No. 66785, unreported.
Nonetheless, appellant argues that vehicular homicide with an alcohol specification and driving under the influence are allied offenses of similar import. We disagree. This court has previously ruled that a firearm specification is not an offense, but merely involves "enhanced punishment." State v. Blankenship (1995), 102 Ohio App.3d 534, 547. Similarly, an alcohol specification is not a separate offense or an essential element of vehicular homicide. Therefore, R.C. 2941.25 is not applicable because an alcohol specification involves "enhanced punishment, not conviction of a separate crime involving identical conduct." Id. The second assignment of error is overruled.
Judgment affirmed.
KOEHLER and POWELL, JJ., concur.
[1] Although not applicable to this case, a prior conviction for involuntary manslaughter (R.C. 2903.04), aggravated vehicular homicide (R.C. 2903.06) or vehicular homicide can enhance the degree to a felony of the fourth degree. R.C. 2903.07(B).